UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:18-cv-21665-GAYLES/OTAZO-REYES

**LUJERIO CORDERO**,

    Plaintiff,

v.

**TRANSAMERICA ANNUITY SERVICE CORPORATION, also known as Wilton Re Annuity Service Corporation, and TRANSAMERICA LIFE INSURANCE COMPANY**,

    Defendants.

_____

**TRANSAMERICA ANNUITY SERVICE CORPORATION**,

    Third-Party Plaintiff,

v.

**ALLIANCE ASSET FUNDING, LLC, SINGER ASSET FINANCE COMPANY, LLC, and LIBERTY SETTLEMENT SOLUTIONS, LLC**,

    Third-Party Defendants.
_____/

## **ORDER**

    **THIS CAUSE** comes before the Court on Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint (the "Motion") [ECF No. 108]. The Court has reviewed the Motion and the record and is otherwise fully advised. For the reasons that follow, the Motion is granted.

## BACKGROUND[1]

### I.  Factual Background

Born in 1990, Plaintiff suffered from childhood lead poisoning from paint in his New York apartment building, which caused debilitating and permanent health conditions. Plaintiff's health conditions, including those affecting his cognitive capacity, have continued into adulthood. On June 25, 1996, Plaintiff, acting through his mother as guardian, entered into a structured settlement agreement (the "Settlement Agreement") with the landlord's insurer, Continental Insurance Company. The Settlement Agreement released the landlord and Continental Casualty Company[2] of liability in exchange for periodic payments over a thirty-year period to be administered through an annuity contract issued by Defendant Transamerica Life Insurance Company ("Transamerica Life"). By assignment under the Settlement Agreement, Defendant Transamerica Annuity Service Corporation, n/k/a Wilton Re Annuity Service Corporation, ("Transamerica Annuity") became the legal owner of the annuity contract. The Settlement Agreement contains an anti-assignment clause restricting Plaintiff's "power to sell, mortgage, encumber or anticipate same" any part of the periodic payments and prohibiting the periodic payments from being "accelerated, deferred, increased or decreased" by Plaintiff. [ECF No. 106 at 12 ¶¶ 37–38]. *See also* [ECF No. 106-1 at 2 ¶ 3]. On December 20, 2008, Plaintiff began receiving monthly payments of $3,183.94.

---

[1] As the Court proceeds on a motion to dismiss, it accepts the allegations in Plaintiff's Second Amended Complaint as true. *See Brooks v. Blue Cross & Blue Shield of Fla. Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (per curiam). Moreover, the Court may properly consider the exhibit attached to Plaintiff's Second Amended Complaint. *Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016) ("A district court can generally consider exhibits attached to a complaint in ruling on a motion to dismiss, and if the allegations of the complaint about a particular exhibit conflict with the contents of the exhibit itself, the exhibit controls." (citation omitted)); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

[2] Continental Casualty Company is the tortfeasor's carrier.

Between 2012 and 2014, Plaintiff entered into six structured settlement transfer agreements with different factoring companies[3] and received large sums of money immediately in exchange for his rights to the monthly payments. Each transfer agreement included: (1) a reason for Plaintiff needing the money immediately; (2) Plaintiff's signature with or without a notary present; and (3) Transamerica Annuity's written acknowledgement of agreement.[4] All six transfer agreements were approved by a state court in Florida.[5] Plaintiff states that he did not read the terms of the transfer agreements and was neither advised nor understood the ramifications of signing them. Although he was told the dates of the court hearings, Plaintiff did not attend because he was told that it was not necessary. Plaintiff was not represented by counsel during those hearings.

On July 11, 2012, Plaintiff received $50,230.00 from the first transfer in exchange for an aggregate value of $90,000.00 in monthly payments. On November 24, 2012, Plaintiff received $15,000.00 from the second transfer in exchange for an aggregate value of $90,000.00 in monthly payments. On April 3, 2013, Plaintiff received $50,000.00 from the third transfer in exchange for an aggregate amount of $117,000.00 in monthly payments. On August 24, 2013, Plaintiff received $70,900.00 from the fourth transfer in exchange for an aggregate amount of $303,700.00 in monthly payments. On October 30, 2013, Plaintiff received $60,000.00 from the fifth transfer in exchange for an aggregate amount of $192,000.00 in monthly payments. On May 15, 2014, Plaintiff received $22,000.00 from the sixth and final transfer in exchange for an aggregate value

---

[3] A factoring company is a business that purchases all or a portion of a structured settlement in exchange for a lump sum of cash at a small discount.

[4] Transamerica Life received a $750.00 "administrative fee" from the factoring companies for each of the six transfers.

[5] As the Court previously noted, *see* [ECF No. 105 at 3], Florida's Structured Settlement Protection Act ("SSPA") requires a Florida state court to authorize any transfer of a structured settlement agreement or the legal rights to the payments in advance based on written express findings as to the transfer's validity. *See* Fla. Stat. § 626.99296(3)(a). The state court may deny or impose conditions if the proposed transfer would contravene the terms of the structured settlement agreement. *Id.* § 626.99296(3)(b).

of $167,134.42 in monthly payments. As a result of the six transfers, Plaintiff's monthly payments under the Settlement Agreement were completely depleted.

In his Second Amended Complaint, Plaintiff asserts that Defendants Transamerica Annuity and Transamerica Life did not investigate the nature of his injuries. [ECF No. 106 at 17 ¶ 57]. Plaintiff alleges that Defendants knew, recklessly disregarded facts, or should have known that the transfer agreements resulted from deceptive and false representations made by the factoring companies to Plaintiff, who could not appreciate the consequences of his actions. *Id.* at 17 ¶ 58. Plaintiff alleges that Transamerica Annuity approved each structured settlement transfer without contacting Plaintiff or otherwise obtaining his informed consent. *Id.* at 17–18 ¶ 59. According to Plaintiff, Defendants had an absolute right and obligation, through the exercise of their duty of good faith and fair dealing, to refuse authorization of the transfers/assignments, which were neither fair, just, reasonable, or in Plaintiff's best interest. *Id.* at 19 ¶¶ 64–65.

## II.     Procedural History

On April 26, 2018, Plaintiff filed his initial Complaint against only Transamerica Annuity. [ECF No. 1]. On February 19, 2019, Plaintiff filed his Amended Complaint, which raised five counts against Transamerica Annuity and Transamerica Life: (1) breach of contract under New York law; (2) constructive fraud under Florida law; (3) exploitation of a disabled adult under Florida's Adult Protective Services Act ("FAPSA"), Fla. Stat. § 415.102; (4) federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c); and (5) Florida's RICO Act, Fla. Stat. § 895.03. [ECF No. 60]. On April 6, 2020, the Court granted Defendants' Motion to Dismiss as to all counts in the Amended Complaint. [ECF No. 105]. The Court found, in part,[6] that the breach of contract claim failed because Defendants did not violate an implied duty of good

---

[6] While the Court dismissed all five counts, it only discusses here the two counts that Plaintiff re-alleges in the Second Amended Complaint.

faith and fair dealing by not enforcing the anti-assignment clause in the Settlement Agreement. *Id.* at 10. The Court also found that the FAPSA claim failed because Plaintiff did not establish an affirmative source of Defendants' fiduciary duty. *Id.* at 12–13. On April 20, 2020, Plaintiff filed his Second Amended Complaint, raising two counts against Defendants: (1) breach of contract under New York law (Count I) and (2) exploitation of a disabled adult under FAPSA (Count II). [ECF No. 106]. On May 11, 2020, Defendants filed the instant Motion. [ECF No. 108].

## LEGAL STANDARD

To survive a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), a claim "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" meaning that it must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While a court must accept well-pleaded factual allegations as true, "conclusory allegations . . . are not entitled to an assumption of truth—legal conclusions must be supported by factual allegations." *Randall v. Scott*, 610 F.3d 701, 709–10 (11th Cir. 2010). "[T]he pleadings are construed broadly," *Levine v. World Fin. Network Nat'l Bank*, 437 F.3d 1118, 1120 (11th Cir. 2006), and the allegations in the complaint are viewed in the light most favorable to the plaintiff. *Bishop v. Ross Earle & Bonan, P.A.*, 817 F.3d 1268, 1270 (11th Cir. 2016). At bottom, the question is not whether the claimant "will ultimately prevail . . . but whether his complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 530 (2011) (internal quotation and citation omitted).

5

# ANALYSIS

I. **Count I Fails to State a Claim for Breach of Contract Under New York Law[7]**

As to Plaintiff's breach of contract claim, Defendants argue that they were under no obligation to enforce the anti-assignment clause, which they argue is solely for their benefit. The Court agrees.

"To state a claim for breach of contract under New York law, the complaint must allege: (i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages." *Edwards v. Sequoia Fund, Inc.*, 938 F.3d 8, 12 (2d Cir. 2019) (quoting *Orlander v. Staples, Inc.*, 802 F.3d 289, 294 (2d Cir. 2015)). "In New York, all contracts imply a covenant of good faith and fair dealing . . . [, which] embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract . . . ." *511 W. 232nd Owners Corp. v. Jennifer Realty Co.*, 773 N.E.2d 496, 500 (N.Y. 2002) (citations and internal quotation marks omitted). This covenant, however, "does not give rise to new, affirmative duties on contracting parties." *Compania Embotelladora Del Pacifico, S.A. v. Pepsi Cola Co.*, 976 F.3d 239, 248 (2d Cir. 2020) (citations omitted); *see also 511 W. 232nd Owners Corp.*, 773 N.E.2d at 500–01 ("[T]he duties of good faith and fair dealing do not imply obligations inconsistent with other terms of the contractual relationship . . . ." (internal quotation marks omitted) (quoting *Murphy v. Am. Home Prods. Corp.*, 448 N.E.2d 86, 91 (N.Y. 1983))). Moreover, "[w]here the contract contemplates the exercise of discretion, this pledge includes a promise not to act arbitrarily or irrationally in exercising that discretion." *Spinelli v. Nat'l Football League*, 903 F.3d 185, 205 (2d Cir. 2018) (citation omitted).

---

[7] The Court applies New York law to Plaintiff's claims because the Settlement Agreement explicitly states that it "shall be governed by and interpreted in accordance with the laws of the State of New York." [ECF No. 106-1 at 1 ¶ 5].

In the Second Amended Complaint, Plaintiff asserts that the Settlement Agreement's anti-assignment clause is intended to benefit and protect him and his economic viability. Plaintiff alleges that Defendants' failure to enforce the anti-assignment clause arose out of a "malevolent intention" to profit at Plaintiff's expense based on transfer administrative fees Transamerica Life received from factoring companies. As a result, Plaintiff argues that Defendants breached their contractual duty of good faith and fair dealing to enforce the anti-assignment clause and refuse authorization of the transfers. However, Plaintiff's claims fail because Defendants had no affirmative obligation to prevent Plaintiff from assigning his annuity benefits. The Settlement Agreement does not require that Defendants exercise the anti-assignment clause for Plaintiff's benefit. Rather, the anti-assignment clause exists for Defendants' benefit and may be exercised at their discretion. *See Singer Asset Fin. Co., LLC v. Wyner*, 937 A.2d 303, 310 (N.H. 2007) (finding that the anti-assignment clause in the settlement agreement "explicitly inured to the benefit of the settling insurer and, by extension, [the annuity issuer].").

Further, the Second Amended Complaint does not sufficiently allege that Defendants "act[ed] arbitrarily or irrationally in exercising [their] discretion" to not enforce the anti-assignment clause. *See Spinelli*, 903 F.3d at 205. Nor do Plaintiff's claims of Defendants' "malevolent intention" sufficiently show an arbitrary or irrational exercise of Defendants' discretion. *Id.* The Settlement Agreement only required Defendants to provide Plaintiff with monthly payments and permitted Defendants to enforce the anti-assignment clause at their discretion. *See, e.g.*, [ECF No. 106 at 11–12 ¶ 36]. *See also* [ECF No. 106-1]. Plaintiff's assertion that Defendants should have prevented the state court-approved transfers are nothing more than attempts to "imply obligations inconsistent with other terms of the contractual relationship . . . ." *511 W. 232nd Owners Corp.*, 773 N.E.2d at 500–01 (citations and internal quotation marks

omitted). Therefore, Count I of Plaintiff's Second Amended Complaint must be dismissed with prejudice.

## II.   Count II Fails to State a Claim Under the Florida's Adult Protective Services Act

As to Plaintiff's FAPSA claim, Defendants argue that Plaintiff fails to state a claim by showing that a fiduciary relationship existed between the parties. As a preliminary matter, this Florida law claim fails as the Settlement Agreement explicitly states that it "shall be governed by and interpreted in accordance with the laws of the State of New York." [ECF No. 106-1 at 1 ¶ 5]. Even so, the Court finds that Plaintiff fails to properly plead his FAPSA claim.

FAPSA is designed to protect vulnerable adults in the state of Florida from "abuse, neglect, and exploitation." Fla. Stat. § 415.101(2). A "vulnerable adult" is defined as "a person 18 years of age or older whose ability . . . to provide for his or her own care or protection is impaired due to a mental, emotional, sensory, long-term physical, or developmental disability or dysfunction, or brain damage, or the infirmities of aging." Fla. Sta. § 415.102(28). A vulnerable adult is "exploited" when:

> [A] person . . . knows or should know that the vulnerable adult lacks the capacity to consent, and obtains or uses, or endeavors to obtain or use, the vulnerable adult's funds, assets, or property with the intent to temporarily or permanently deprive the vulnerable adult of the use, benefit, or possession of the funds, assets, or property for the benefit of someone other than the vulnerable adult.

*Id.* § 415.102(8)(a)(2); *see also id.* § 415.102(17) (defining "obtains or uses"). FAPSA provides that exploitation "may include, but is not limited to" actions such as: (1) "Breach of fiduciary relationships . . . resulting in the unauthorized appropriation, sale, or transfer of property;" (2) "Unauthorized taking of personal assets;" (3) "Misappropriation, misuse, or transfer of moneys belonging to a vulnerable adult from a personal or joint account;" or (4) "Intentional or negligent failure to effectively use a vulnerable adult's income and assets for the necessities required for that

8

person's support and maintenance." *Id.* § 415.102(8)(b). FAPSA provides "[a] vulnerable adult who has been . . . exploited . . . a cause of action against any perpetrator and may recover actual and punitive damages for such . . . exploitation." Fla. Stat. § 415.1111.

Based on the factual allegations of the Second Amended Complaint, Plaintiff still fails to bring forth a viable claim under FAPSA. In Count II, Plaintiff bases his FAPSA claim on the allegation that "Defendants allowed [Plaintiff's] exploitation by the factoring companies through its failure to honor his contractual entitlement under the [Settlement Agreement's] anti-assignment provision . . . ." [ECF No. 106 at 22 ¶ 82]. However, as noted above, Defendants had no affirmative obligation to prevent Plaintiff from assigning his annuity benefits to factoring companies—transfers that were approved on six occasions by Florida state court judges. As Plaintiff's FAPSA claims are belied by the Settlement Agreement, Count II must also be dismissed with prejudice.

## CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendants TransAmerica Annuity Service Corporation and Transamerica Life Insurance Company's Motion to Dismiss Plaintiff's Second Amended Complaint, [ECF No. 108], is **GRANTED**.

2. Plaintiff Lujerio Cordero's Second Amended Complaint, [ECF No. 106], is **DISMISSED with prejudice**.

3. Any pending motions are **DENIED as moot**.

4.       This case is **CLOSED**.

**DONE AND ORDERED** in Chambers in Miami, Florida, this 29th day of March, 2021.

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE